UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALLSTATE INSURANCE CO.,

    Involuntary Plaintiff,

  v.                                                                 Case No. 03-C-1249

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

**ORDER**

      Plaintiff Allstate Insurance Company seeks recovery from Electrolux for the fire and destruction of the home of its insured. It has filed a motion to compel responses to numerous outstanding discovery requests. In response, the defendant indicated it was willing to cooperate and provide additional documents, but that it would not do so unless and until there was an entry of a protective order in this case. It also indicated in its response that it preferred this court to hold the matter in abeyance for 30 days pending the entry of a protective order because it believed the matter would be settled between the parties once a protective order had been entered. Upon a subsequent stipulation of the parties, a protective order was entered in this case on September 15, 2005. Allstate has not replied to the defendant's response brief. Based upon that brief, and in particular on its uncontroverted statement that the discovery issues will have been settled upon entry of the protective order, I will deny the motion to compel as moot. In the event Allstate continues to have problems obtaining additional discovery to which it is entitled, it may renew or refile the motion to that effect.

In addition, defendant Electrolux has moved to strike the testimony of Allstate's electrical expert witness, Paul Hansen. It claims that Hansen's testimony fails to meet the criteria set forth in Fed. R. Evid. 702 as well as the Supreme Court's decision in *Daubert v. Dow Merrell Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Rue 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Electrolux's objections attack not the relevance of Hansen's testimony (i.e., whether it would assist the trier of fact to understand the evidence) but its reliability. It first protests that Hansen's conclusions are speculative because he offered no scientific methodology or theory on which to base them. Electrolux cites a case in which the purported expert, whose testimony the court rejected, relied on "general principles of physics" but did not link those principles to any concrete facts in the case. *Pride v. Bic Corp.,* 54 F. Supp.2d 757 (E. D. Tenn. 1998). That did not happen here. Instead, Hansen, whose electrical expertise is not questioned, inspected the refrigerator on several occasions. His examinations used facts to rule out most areas of the refrigerator as suspect in causing the fire. He also concluded, based on his inspections of the debris and burn patterns, that the fire came from within the refrigerator rather than outside. There does not seem to be anything unusual or unreliable about his general approach, and his conclusion is not mere speculation, as Electrolux claims, but is based on several identifiable facts.

Electrolux also protests that Hansen failed to test his theory. Specifically, his theory of causation is that the heating element in the freezer's icemaker went into "thermal runaway" due to failures on the welding of one or more internal switches. Electrolux claims he should have run

tests of this theory on models of the icemaker in question, whereas Hansen merely inspected a similar device rather than proving that his theory was actually repeatable in the lab. It also suggests its own expert's testing has disproved Hansen's theory.

Allstate protests that such tests are neither required nor feasible given the context of the fire in this case. Moreover, it notes that Hansen did conduct several tests involving burning of the insulation as well as resistance testing. And, given the number of variables involved in the causation of the fire, Allstate argues that replication of the freezer conditions would be impossible. Indeed, that does appear to be true, which is a fact that might make Hansen's theory difficult to prove at trial but which does not mean that the expert's methodology was suspect. It also appears that Hansen's theory is based at least in part not on known facts but on the process of eliminating all other possible causes. Such testimony is fair game; again, it might subject him to a difficult cross-examination, but it does not preclude his testimony outright.

Electrolux also argues that Hansen has failed to identify *why* the fire was started, even if he has a theory to explain what might have happened. That is, he has not explained what particular defect gave rise to the failure. But such testimony is not usually required; indeed, to require a sort of Grand Unified Theory of causation would exclude the testimony of many, or most, expert witnesses. We are dealing not with scientific certainties but with theories to explain events *ex post facto*–otherwise trials would not be necessary. Electolux's brief reads like a strong closing argument, and at times like a cross-examination, but it does not persuade me that Hansen's methodology was either unscientific or unreliable.

Finally, Electrolux complains that Hansen's theory of causation is not accepted by the scientific community and was not arrived at through a verbatim following of NFPA 921, the industry guide for fire inspections. Again, however, although the objections to Hansen's

procedures do appear to rest on solid footing, they do not rise to the level of warranting an outright rejection of his testimony. That he relied in part on others to determine the location of the fire's origin, and that he has difficulty explaining how the fire would be sustainable in a closed freezer, for example, are matters that can adequately be raised at trial and do not undercut the methodological reliability of his opinion. And as for testing, it is difficult to imagine the replication of the failures Hansen claims occurred here. Perhaps that will be grounds for attacking his conclusions, but I do not believe his testimony to be so speculative as to be inadmissible under Rule 702 and *Daubert*.

Electrolux relies a great deal on *Weisgram v. Marley Co.,* 169 F.3d 514 (8th Cir. 1999), but the analogy is strained. There, a witness (a fire captain) was allowed to testify that the fire started because "'we had a malfunction of the heater'" . . . notwithstanding [his] admission that he was 'not an electrical expert' and that he did not 'know what happened with the heater[;]' he nevertheless was allowed to testify that he "'believe[d] that we had a runaway of that heater.'" *Id.* at 518. That scenario does not resemble the witness in this case, an electrical engineer testifying about an electrical malfunction. Another witness in *Weisgram* speculated about the cause of the fire being a rug covering up a baseboard heater, but he had not visited the fire scene and based his conclusions largely on the observations of the first witness. Electrolux tries to draw the parallel to this case–Hansen did not visit the scene either–but in this case the expert's theory is that the fire started *within* the device that he examined. As such, the particular situs of where that device was located at the scene is far less relevant. The comparison to *Weisgram* is thus not particularly apt.

For these reasons, the motion to compel is DENIED as moot, and the motion to exclude the testimony of the plaintiff's expert is DENIED.

Allstate also brought breach of warranty claims against Electrolux, but has now withdrawn such claims. Accordingly, the motion for partial summary judgment is GRANTED.

**SO ORDERED.**

Dated this 31st day of October, 2005.

                                                    s/ William C. Griesbach
                                                    WILLIAM C. GRIESBACH
                                                    United States District Judge